IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA ELLEFSON,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:15-cv-00464-PA

OPINION AND ORDER

PANNER, Judge:

    Plaintiff Lisa Ellefson brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On August 31, 2011, plaintiff applied for Disability Insurance Benefits. Tr. 140-46. Her application was denied initially and upon reconsideration. Tr. 86-90, 92-95. On May 2, 2013, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by her non-attorney friend and testified, as did a vocational expert ("VE"). Tr. 34-56. On June 24, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 22-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## STATEMENT OF FACTS

Born on December 23, 1961, plaintiff was 48 years old on the alleged onset date of disability and 51 years old at the time of the hearing. Tr. 140. Plaintiff left school after completing the tenth grade. Tr. 38-39, 161. She worked previously in customer service at garden centers. Tr. 162. Plaintiff alleges disability as of November 15, 2010, due to fibromyalgia, hepatitis C, depression, and degenerative disc disease of the shoulders, neck, and back. Tr. 160.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

2 – OPINION AND ORDER

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the

3 – OPINION AND ORDER

Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ determined plaintiff had the following medically determinable, severe impairments: "fibromyalgia, degenerative disc disease, and status post fusion." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 25.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to "perform the full range of light work." *Id.*

At step four, the ALJ determined plaintiff could perform her past relevant work as a garden center worker and therefore was not disabled under the Act. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; (2) improperly weighing medical evidence from her treating doctor, Michael Bower, M.D.; and (3) rejecting lay testimony from her former employer, Brett Schoppert.

### I.      Plaintiff's Testimony

Plaintiff asserts that the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented

4 – OPINION AND ORDER

impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is primarily unable to work due to an inability to use her arms. Tr. 39, 46-47. Specifically, plaintiff endorsed pain due to calcium tendonitis in both shoulders; her doctor attempted to remove the bone spurs on the left shoulder but the surgery "went horribly wrong." Tr. 39-40. Additionally, plaintiff reported lingering pain in her neck following major fusion surgery that transpired in 2001, pain in her lower back related to degenerative disc disease, and "achy ankles and wrists [and] muscle pain [from] the fibromyalgia." Tr. 44. Plaintiff also described memory and concentration problems, which she attributed to "fibro fog" and medication side-effects.[1] Tr. 42, 48.

---

[1] In addition to prescription medications for depression, high cholesterol, and breast cancer, plaintiff takes eleven Methadone, four Oxycodone, four Soma, and four Valium per day. Tr. 43, 163, 203-04.

5 – OPINION AND ORDER

Plaintiff described her daily activities as follows:

> I wake up, and I'm – it's hard to get out of bed, and I'm very stiff. I'm in a lot of pain until I take my medication, and then I lay down until it takes effect. And then I get up, and, you know, I try to do a little housework. I take a lot of breaks. I sit down. I sweat a lot, and then I usually take a nap. I don't have much of an appetite [and am nauseous from my medications] . . . I can't go to physical therapy because it's too painful. I've tried. I check the mail, I have a little Chihuahua dog that I walk down the street and back.

Tr. 45-46, 48. In the afternoon she drives less than a mile to pick up her adult son from work and "make[s] dinner maybe twice a week." Tr. 40-42. Her husband does the remainder of the household chores, including all the shopping. *Id.*

Plaintiff explained that she last worked for approximately three weeks during the 2011 holiday season, "tak[ing] money" at a Christmas tree lot in California "to help [her friend] because he didn't trust the guys that he hired." Tr. 42, 45. She did not get paid for this work but instead her friend gave her "a bunch of plants" from his nursery. *Id.*

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible[2] due to her

---

[2] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-39, *available at* 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's June 2013 decision was issued almost three years before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue fail to pass muster irrespective of which standard governs, the Court need not resolve this issue.

6 – OPINION AND ORDER

work after the alleged onset date and activities of daily living, as well as the lack of corroborating medical evidence. Tr. 25-27.

Notably, the ALJ found that plaintiff's credibility was undermined by her employment selling Christmas trees in California. Tr. 27. Yet plaintiff performed this work less than twenty hours per week, for a friend, for less than a month. Tr. 42, 45. Plaintiff was unable to continue in this position due to her alleged impairments and has not been to California since. Tr. 45, 47. Accordingly, because she earned less than substantial gainful levels (and may have been engaged in a sheltered workshop), it is undisputed that this work did not satisfy the ALJ's step-one inquiry or qualify as past relevant work. Tr. 24, 28. The fact that plaintiff attempted to work part-time for less than one month, but was ultimately unsuccessful, does not impugn her credibility. Tr. 47, 175, 355; *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

The ALJ also found that plaintiff's activities of daily living belied her subjective symptom testimony. Tr. 27. In support of this conclusion, the ALJ cited to evidence demonstrating that plaintiff feeds her dog and takes it on short walks, engages in limited household chores with her husband's help, waters plants, drives a car, watches television, "had been pulling weeds," and "cared for two boys." *Id.* An ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

7 – OPINION AND ORDER

As a preliminary matter, the Court notes the majority of evidence that the ALJ relied on is entirely consistent with plaintiff's hearing testimony and, as such, does not support a negative credibility finding. Tr. 176-85, 294, 400-10; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). The remainder of the evidence was mischaracterized by the ALJ – namely, that plaintiff "had been pulling weeds" and "cared for two boys" – and accordingly also fails to support a negative credibility finding. *See Reddick*, 157 F.3d at 722-23 (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Significantly, plaintiff's two sons were adults as of the alleged onset date and there is evidence in the record evincing that they are self-sufficient. Tr. 40, 226, 414-16. Further, plaintiff has constantly reported that when she feels able, she spends time in her garden; however, these activities are not frequent, let alone daily, and of short duration.[3] Tr. 181, 406, 412. Therefore, activities such as plaintiff's – *i.e.*, occasionally gardening, engaging in an unsuccessful work attempt within a year of the alleged onset date, and taking several hours, with frequent breaks, to complete relatively limited chores – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. *See Morgan v. Colvin*, 2013 WL 6074119, *5-6 (D. Or. Nov. 13, 2013) (reversing the ALJ's credibility finding under analogous circumstances).

---

[3] There is only a single chart note in the 430 page record that mentions plaintiff pulling weeds. *See* Tr. 417 (plaintiff reporting an "exacerbation" of her "chronic pain from [degenerative disc disease in her] lumbar spine [which] started while she was pulling weeds 2 weeks ago"). This sole reference does not constitute substantial evidence.

8 – OPINION AND ORDER

Finally, the ALJ found that "the objective medical evidence does not support [plaintiff's] allegations of a disabling level of physical functioning." Tr. 26. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons for finding the claimant un-credible are not supported by substantial evidence.

In any event, the ALJ once again mischaracterized the record in recounting the objective medical evidence. For instance, the ALJ recognized that "[i]maging of [plaintiff's] right should from August 2010 showed calcification tendonitis," a condition that is characterized by severe pain and stiffness. *See, e.g.*, American Academy of Orthopaedic Surgeons, *Why is calcific tendinitis so painful? New research highlights how damaged tissue may foster cell, blood vessel and pain receptor growth, causing chronic inflammation in common shoulder condition*, www.sciencedaily.com/releases/2016/02/160203161105.htm (Feb. 3, 2016). Nevertheless, the ALJ disregarded plaintiff's shoulder pain complaints because she had "5 out of 5 strength in her upper and lower extremities bilaterally [and] intact sensation and reflexes," and had "been on chronic pain medications [from which] she does get relief." Tr. 26-27.

However, the fact that plaintiff had intact strength, sensation, and reflexes in her arms has no bearing on whether she suffers from shoulder pain or stiffness; these are rote observations recorded in plaintiff's medical record based on a one-time examination and, thus, in no way

9 – OPINION AND ORDER

undercut her diagnosis of calcific tendinitis or the fact that she has consistently endorsed symptoms associated therewith.[4] Tr. 305, 309.

Moreover, the ALJ's finding concerning plaintiff's medications fails to take into consideration the degree to which pain control was achieved. As evinced by plaintiff's daily activities, she does not obtain complete pain control from her medications and also experiences adverse side-effects, including fatigue, concentration and memory problems, and nausea. *See, e.g.*, Tr. 46-48, 183-84, 338, 373, 409; *see also* Tr. 305 (plaintiff reporting "marked" and "acute" shoulder pain to Dr. Bower despite the "significant relief" she gets from methadone), 417 (plaintiff noting to Dr. Bower that her medications only "[t]ake . . . the edge off pain" such that it is "[h]ard to do chores at home").

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for finding plaintiff not fully credible. The ALJ's credibility finding is reversed.

## II. Medical Opinion Evidence

Plaintiff contends that the ALJ improperly discredited Dr. Bower's medical opinion. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester*, 81 F.3d at 830. Generally, "the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citation omitted); *see also* SSR 96-2p, *available at* 1996 WL 374188 ("[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for

---

[4] During the same evaluation, examining doctor Richard Gil, M.D., diagnosed plaintiff with "[s]evere left shoulder pain due to chronic rotator cuff tendinopathy" and observed that her "left shoulder is significantly decreased in range of motion and tender to palpitation." Tr. 342.

10 – OPINION AND ORDER

controlling weight"). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

Dr. Bower has been plaintiff's treating physician since 2009. Tr. 310. In October 2012, Dr. Bower completed a medical source statement. Tr. 368-73. The doctor indicated that plaintiff would have lifting/carrying and positional restrictions due to her underlying physical impairments. *Id.* In particular, Dr. Bower opined that plaintiff could not: lift or carry more than ten pounds, stand or walk for more than two hours total in an eight hour workday, reach overhead, climb ladders or scaffolds, or stoop, kneel, crouch, or crawl. Tr. 368-71.

The ALJ did not afford any particular weight to Dr. Bower's opinion. Tr. 27. Rather, the entirety of the ALJ's discussion of Dr. Bower is as follows:

> Dr. Bower's opinion of limiting [plaintiff] to less than light lifting is not supported by the objective medical evidence of record. His own notes indicate that limitations were [d]ue to only diffuse weakness and degenerative disc disease. However, the MRI following the fusion does not show significant decompensation.

Tr. 27.

Nevertheless, the ALJ assigned "significant weight" to the January 2012 opinion of Dr. Gil, who opined that plaintiff could stand/walk for six hours in an eight hour workday, and lift 20 pounds occasionally and ten pounds frequently, with no reaching restrictions. *Id.* In support of this conclusion, the ALJ summarized portions of Dr. Gil's findings and noted that his opinion "is based on actual physical testing, not subjective pain complaints." *Id.*

11 – OPINION AND ORDER

The Court finds that the ALJ committed harmful legal error in evaluating the medical evidence in three respects. First, contrary to the ALJ's assertion, Dr. Bower made clear that his opinion was based on more than plaintiff's degenerative disc disease and diffuse weakness. *See* Tr. 368-73 (Dr. Bower pointing to, amongst other impairments, plaintiff's "cervical arthritis," "lumbar arthritis," "calcific tendinitis," and "chronic fatigue" as the "clinical findings [that] support [his assessed] limitations"). Indeed, in other portions of his opinion, the ALJ acknowledged objective medical evidence which establishes that plaintiff suffers from calcific tendinitis. Tr. 26-27.

Second, the ALJ misreads plaintiff's April 2013 MRI. This screening was intended as a comparison to her lumbar 2006 MRI. Tr. 430. While the 2013 findings revealed "[n]o major change[s] seen from the prior exam," the fact remains that there are several areas of plaintiff's lumbar spine that have undergone "moderately" severe degeneration and "significant" disc protrusion. *Id.* The ALJ accepted this evidence in determining that plaintiff had the medically determinable, severe impairment of "degenerative disc disease" at step two.[5] Tr. 24. Furthermore, Dr. Gil did not review any imaging studies relating to plaintiff's lumbar or cervical spine, or Dr. Brown's medical source statement, in rendering his opinion. Tr. 338. As such, there is no objective medical evidence in the record regarding plaintiff's spine that detracts from or contradicts this aspect of Dr. Bower's report. *See* Tr. 341-42 (Dr. Gil noting decreased range of motion and tenderness upon examination in plaintiff's lumbar and cervical spine).

---

[5] The Commissioner's assertion that plaintiff's 2013 MRI is, alone, a basis to reject Dr. Bower's assessed limitations – *i.e.*, because Dr. Bower's opinion was "more severe than what an MRI" showed – is unpersuasive. Def.'s Resp. Br. 4. Even "mild degenerative disc disease can have disabling effects." *Dahl v. Comm'r*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (collecting cases). In other words, mild degenerative changes do not necessarily equate to mild functional limitations.

Third, the ALJ's decision is silent as to several salient aspects of Dr. Bower's opinion and therefore the requisite analysis is lacking.[6] *See* Def.'s Resp. Br. 4 (recognizing that "the ALJ did not specifically address the other limitations opined by Dr. Bower"); *see also Lester*, 81 F.3d at 830 (9th Cir. 1996) ("[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence"). Contrary to the Commissioner's assertion, this error was not harmless in light of plaintiff's "mild degenerative changes [and] full strength in her shoulder despite some objective evidence of calcific tendonitis." Def.'s Resp. Br. 4. As discussed herein, plaintiff's 2013 MRI does not undermine Dr. Bower's opinion and plaintiff's intact strength has no bearing on whether she suffers from debilitating shoulder pain. The ALJ's evaluation of Dr. Bower's opinion is reversed.

### III.     Lay Testimony

Plaintiff argues that the ALJ neglected to provide a legally sufficient reason to reject the statements of Mr. Schoppert. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

---

[6] The ALJ's implication that Dr. Bower's opinion was afforded less weight because it was based on plaintiff's "subjective pain complaints" is neither sufficiently specific nor supported by the record. *See Ritchotte v. Astrue*, 281 Fed.Appx. 757, 759 (9th Cir. 2008) (reversing the ALJ's evaluation of the medical opinion evidence under analogous circumstances). As discussed above, the ALJ erred in assessing plaintiff's credibility. In any event, it is clear from both the record before the Court and the plain language of Dr. Bower's medical source statement that an objective basis existed for the limitations he assessed.

13 – OPINION AND ORDER

Mr. Schoppert offered written testimony relating to plaintiff's impairments in April 2013. Tr. 205. Mr. Schoppert explained that plaintiff was employed at his "store in the nursery position in 2010." *Id.* He did not rehire her the following season "because of her physical limitations, which included a bad back and bad shoulders." *Id.* As a result of these conditions, Mr. Schoppert observed that plaintiff "could not lift anything over 10 lbs.," which was problematic because "the nursery has a lot of trees and shrubs that weigh in excess of 50 lbs." *Id.* He also observed that plaintiff was "sick a lot, due to side effects" from her medications. *Id.*

The ALJ discredited Mr. Schoppert's statements because he "is not an acceptable medical source" and his "statement is inconsistent with the opinions of Dr. Gil and Dr. Eder." Tr. 28.

Initially, the fact that Mr. Schoppert is not an acceptable medical source is not a legally sufficient reason to reject his testimony. As plaintiff denotes, "[t]his reasoning is axiomatically invalid; no lay witness could ever be an acceptable medical source trained in making exacting clinical judgments." Pl.'s Opening Br. 11 (internal citation and ellipses omitted). Nevertheless, inconsistency with the medical evidence is a germane reason to discredit the testimony of a lay witness. *Bayliss*, 427 F.3d at 1218.

Mr. Schoppert's comment that plaintiff could only lift 10 pounds is directly contradicted by the opinions of Dr. Gil and Sharon Eder, M.D., the state agency consulting source who based her opinion on Dr. Gil's report. Tr. 78, 343. Conversely, nothing in the record contravenes Mr. Schoppert's statement regarding plaintiff's medication side-effects; neither Dr. Gil nor Dr. Eder address this issue. Tr. 78-80, 338-43; *see also* Tr. 373 (Dr. Bower opining that plaintiff's medications affect her functioning). The ALJ erred in rejecting this aspect of Mr. Schoppert's testimony.

14 – OPINION AND ORDER

## IV. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said

> otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

In this case, the ALJ erred by failing to provide a legally sufficient reason, supported by substantial evidence, for rejecting plaintiff's testimony that she cannot work due to pain and concentration problems. Likewise, the ALJ neglected to furnish a legally sufficient reason, supported by substantial evidence, for discrediting treating Dr. Bower's opinion that plaintiff cannot perform light exertion work, and for discounting Mr. Schoppert's observation that plaintiff experienced frequent interruptions due to her medication side-effects. Indeed, the record consistently demonstrates that plaintiff is unable to lift or carry more than ten pounds, stand or walk for extended periods, or maintain concentration. In addition, the Commissioner has not pointed to, and an independent review of the record does not reveal, any evidence that casts into serious doubt the debilitating extent of plaintiff's impairments. *See* Def.'s Resp. Br. 12 (citing only to the opinion of Dr. Gil). Lastly, there is no indication that plaintiff's conditions, at least one of which is degenerative in nature, improved after the ALJ's decision but prior to the date last insured, which lapsed in June 2015.

Thus, the record has been fully developed and there are no outstanding issues left to be resolved. Plaintiff turned fifty approximately one year after the alleged onset date, thereby placing her within the "closely approaching advanced age" category. 20 C.F.R. § 404.1563(d). Under the Medical-Vocational Guidelines, she would be disabled as of that date if she could

16 – OPINION AND ORDER

perform less than light exertion work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.10; Tr. 53-54. Moreover, the VE testified that a hypothetical individual whose ability to concentrate was impacted fifteen to twenty percent of the time would not be able to maintain competitive employment. Tr. 55. As such, the Court, in its discretion, credits the improperly rejected evidence as true and finds that plaintiff is disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 14 day of July 2016.

_____
Owen M. Panner
United States District Judge

17 – OPINION AND ORDER